**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MEGHAN FAXEL and MIKE FAXEL,** ) | |
| ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | No. 19 C 4649 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| ) | |
| **WILDERNESS HOTEL & RESORT, INC.,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

In this diversity case, plaintiffs Meghan and Mike Faxel bring suit against defendant, Wilderness Hotel & Resort, Inc., asserting claims of premises liability, negligence, and loss of consortium, all arising out of an injury Meghan suffered on one of defendant's waterslides in Wisconsin. Defendant moves to dismiss for lack of personal jurisdiction or, alternatively, to transfer this case to the Western District of Wisconsin. For the following reasons, the Court grants the motion and transfers this case to the Western District of Wisconsin.

**I.   BACKGROUND**

Plaintiffs Meghan and Mike Faxel are residents of New Lenox, Illinois. According to plaintiffs' complaint, on August 18, 2016, Meghan was a guest at defendant's Wilderness Resort in Wisconsin Dells, Wisconsin. When Meghan attempted to ride the resort's "toilet-bowl type" indoor water slide (Compl. at 3, ECF No. 1), she became stuck in the whirlpool section of the ride and then flipped over, fracturing her clavicle. Upon returning to Illinois, Meghan was forced to undergo multiple surgeries to correct the problem. In this lawsuit, plaintiffs claim that they are entitled to damages because Meghan was injured due to defendant's failure to maintain the water

ride in safe and proper working order and its negligence in operating the ride, and because Mike, Meghan's husband, suffered a loss of consortium as a result of the injury.

## II. PERSONAL JURISDICTION

### A. Legal Standards

A motion to dismiss pursuant to Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *Central States v. Phencorp. Reins Co.*, 440 F.3d 870, 875 (7th Cir. 2006); Fed. R. Civ. P. 12(b)(2). In ruling on a Rule 12(b)(2) motion, courts may consider matters outside of the pleadings. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When a court determines a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, the plaintiff must make a *prima facie* case of personal jurisdiction. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 432 (7th Cir. 2010); *GCIU-Employer Ret. Fund*, 565 F.3d 1018, 1023 (7th Cir. 2009). As such, the plaintiff bears the burden of establishing that personal jurisdiction exists. *N. Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). To determine whether the plaintiff has met its burden, the court may consider affidavits from both parties. *Felland v. Clifton*, 582 F.3d 665, 672 (7th Cir. 2012). When the defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Found.*, 338 F.3d at 783. Courts must also resolve all factual disputes in the plaintiff's favor. *GCIU*, 565 F.3d at 1020, n.1. Unrefuted facts in defendant's affidavits, however, will be taken as true. *Id*.

"A federal court exercising diversity jurisdiction has personal jurisdiction only where a court of the state in which it sits would have such jurisdiction." *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 855 n.2 (7th Cir. 2011). Illinois's long-arm statute authorizes personal

2

jurisdiction to the extent permitted by the Illinois Constitution and the United States Constitution. 735 ILCS 5/2–209(c). "[T]here is no operative difference between these two constitutional limits," so a single constitutional inquiry will suffice. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). "The key question is therefore whether the defendants have sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo v. Dworkin*, 601 F.3d 693, 700-01 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction: general and specific. General jurisdiction exists where a defendant has "continuous and systematic general business contacts" with the forum, while specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 414 n.8 (1984)). A defendant is subject to general jurisdiction only where its contacts with the forum state are so substantial that it can be considered "constructively present" or "at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Tamburo*, 601 F.3d at 701 ("The threshold for personal jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence."). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702.

B. Analysis

Defendant argues that the Court should grant its motion to dismiss because it does not have the requisite "minimum contacts" with the state of Illinois to be subject to personal jurisdiction by an Illinois court. According to an affidavit submitted by its chief operating officer, Joseph Eck, defendant's resort is located in Wisconsin, and it conducts no operations in Illinois of any kind, apart from print and radio advertising. (Eck Aff. ¶¶ 1-4, ECF No. 11.) Further, any reservations its customers make remotely are not "finalize[d] until a customer physically appears in Wisconsin at the resort located in Wisconsin Dells." (*Id.* ¶ 5; *see id.* ¶ 4.)

Plaintiffs respond that this Court "indeed has general jurisdiction" over defendant because of defendant's print and radio advertising, which, plaintiffs argue, is specifically targeted at Illinois. According to plaintiffs, defendant has not only placed its own print and radio advertising in Illinois, as Eck admitted in his affidavit, but it is a member of the Wisconsin Dells Visitor and Convention Bureau ("WDVCB"), which conducts sweeping, large-scale advertising campaigns and elaborate promotional events in Chicago and elsewhere in Illinois on behalf of Wisconsin Dells resorts.

Even if the Court could consider the WDVCB's advertising as defendant's own contacts—a dubious proposition, *Helicopteros*, 466 U.S. at 417 ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.")—it would not suffice to establish that this Court has general jurisdiction over defendant. General jurisdiction requires defendant to have such "continuous and systematic contacts as to render [it] essentially at home" in Illinois. *See Goodyear*, 564 U.S. at 919 (internal quotation marks omitted). But defendant is a Wisconsin corporation with its principal place of business in Wisconsin Dells, Wisconsin, and,

4

while it solicits business in Illinois, "no case has ever held that solicitation alone is sufficient for general jurisdiction." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 699 (7th Cir. 2015) (Illinois court did not have general jurisdiction over Wisconsin ski resort, at which Illinois-resident plaintiff suffered injury, merely because resort solicited business in Illinois); *see also Ruddy v. Wilmot Mountain, Inc.*, No. 10 C 07219, 2011 WL 3584418, at *3 (N.D. Ill. Aug. 12, 2011) (reaching a similar result, despite somewhat more substantial advertising in Illinois, reasoning that "Illinois courts consistently reject mere solicitation of business as a basis for the exercise of general personal jurisdiction") *cited approvingly in Kipp*, 783 F.3d at 698-99.

It is unclear whether plaintiffs also intend to argue that the Court has specific jurisdiction over defendant. Plaintiffs do not use the term, but they do cite the specific jurisdiction standard and a case that applied it, *Madison Miracle Prods., LLC v. MGM Distribution Co.*, 978 N.E.2d 654, 669 (Ill. App. Ct. 2012), and they repeatedly argue that defendant "specifically targets" Illinois with its advertising. (*See* Pls.' Resp. in Opp'n at 3-4.) The Court assumes that plaintiffs intend to assert specific jurisdiction as well.

If defendant's advertising activity targeted at Illinois is as extensive as plaintiffs allege, and if it is as successful in attracting Illinois customers as plaintiffs contend it is, then it might well have the minimum contacts necessary for specific jurisdiction. *uBID, Inc.*, 623 F.3d at 427 (defendant's contacts with Illinois were sufficient for specific jurisdiction because it had "thoroughly, deliberately, and successfully exploited the Illinois market" via advertising and sales) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-81 (1984)).

The Court doubts, however, that plaintiffs' claims "arise out of or relate to" those contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). "Unfortunately, the Supreme Court has not yet explained the scope of this requirement," *O'Connor v. Sandy Lane Hotel Co.*,

5

496 F.3d 312, 318 (3d Cir. 2007), and the various circuits have adopted "competing approaches" to it, *uBid*, 623 F.3d at 430. Some have required the defendant's contacts with the forum to be the proximate cause of the claim, and others have required them to be merely a "but-for" cause of the claim. *See id.* (citing *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998) (requiring proximate causation) and *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051 n.7 (9th Cir. 1997) (requiring but-for causation)). Finding the former approach to be underinclusive and the latter overinclusive, the Seventh Circuit has declined to adopt either, instead endorsing the Third Circuit's approach, which eschews any "mechanical test" based on any theory of causation, *uBid*, 623 F.3d at 430, in favor of a more flexible inquiry rooted in the "reciprocity principle upon which specific jurisdiction rests," *O'Connor*, 496 F.3d at 323. That "reciprocity principle" is "the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable," in which "out-of-state residents who 'exercise the privilege of conducting activities within a state . . . enjoy the benefits and protection of' the state's laws," and "in exchange, they must submit to jurisdiction over claims that arise from or relate to those activities." *Id.* at 322 (quoting *Burger King*, 471 U.S. at 475-76) (internal alteration marks omitted). Thus, the "precise causal relationship between contacts and claim" is "not important"; what matters is "that the relationship be 'intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable'" in the forum state. *uBid*, 623 F.3d at 430 (quoting *O'Connor*, 496 F.3d at 323).

If a Wisconsin resort advertises heavily in Illinois and relies heavily on revenue generated by visitors from Illinois, and an Illinois visitor suffers a serious injury during her stay at the Wisconsin resort, is there a sufficiently "intimate relationship" between the Illinois contacts and the claim to "make the relatedness quid pro quo balanced and reasonable," *uBid*, 623 F.3d at 430-

6

31, and make personal jurisdiction in Illinois reasonably foreseeable?  While it might seem so in the abstract, the Court doubts it, at least in the circumstances of this case, in which plaintiffs make no claim that defendant's advertising induced Meghan to travel to defendant's resort.  The defendant's only truly in-forum contacts are its advertising, but plaintiffs have made no showing that the in-forum advertising is at least a but-for cause of the injury, *cf. O'Connor*, 496 F.3d at 323-24 (plaintiff contracted for spa services at defendant's foreign resort *because* of defendant's solicitation of plaintiff in the forum state), or that the advertising forms any part of the injury-causing misconduct itself, *cf. Ubid*, 623 F.3d at 430-31 (defendant's advertising and sales in the forum state were the basis of plaintiff's cybersquatting claims), *Casual Panache, Inc. v. Burmax Co., Inc.*, No. 15-CV-234-WMC, 2016 WL 1259436, at *4-5 (W.D. Wis. Mar. 30, 2016) (relatedness requirement met "because the [copyright and Lanham Act claims] arise[] from the Rachel picture placed in catalogs that Burmax purposely mailed to Wisconsin residents on at least two occasions").

While it may be that, as in *uBid*, defendant has used its advertising contacts to "thoroughly, deliberately, and successfully exploit[] the Illinois market" by convincing Illinois residents to travel to its Wisconsin resort, the Court is not aware of any case holding that a plaintiff's injury during foreign travel is sufficiently connected to the defendant's advertising contacts in the forum state to support personal jurisdiction, in the absence of other contacts or a showing of a causal or other "intimate" relationship between the advertising and the injury. *See Collazo v. Enter. Holdings, Inc.*, 823 F. Supp. 2d 865, 872-74 (N.D. Ind. 2011) (defendant's website permitting in-forum customers to make reservations at foreign location insufficiently related to plaintiff's claim that she was injured at the foreign location, where plaintiff did not "contend that she actually used that [web]site to book a reservation" at the foreign location); *Ruddy*, 2011 WL 3584418, at *2

7

("[S]pecific jurisdiction is inapplicable because the injury and claim of negligence arise from plaintiff's presence at the ski resort and not from any advertising that defendant may have done in Illinois."); *see also RAR*, 107 F.2d at 1278 ("'the action must *directly arise* out of the specific contacts between the defendant and the forum state'") (quoting *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir. 1995) (emphasis added by Seventh Circuit); *Linehan v. Golden Nugget*, No. 05 C 7030, 2008 WL 4181743, at *6 (N.D. Ill. Sept. 5, 2008) (claim did not arise out of or relate to defendant's advertising contacts in Illinois because plaintiff "failed to plead [that] her alleged trip and fall injury in Las Vegas" was "in any way related to . . . advertising or promotional activities of defendants" or that plaintiff "had any knowledge of any of these activities prior to her alleged trip and fall, much less that Defendants' promotional activities . . . induced Plaintiff to patronize [defendants' casino]"); *Marshall v. Inn on Madeline Island*, 610 N.W.2d 670, 676 (Minn. Ct. App. 2000) ("[A]dvertising contacts can justify the exercise of specific jurisdiction but only where unlawful or misleading advertisements are the basis of the plaintiff's claims.").

The Court concludes that it lacks personal jurisdiction over defendant because defendant does not have such continuous and systematic contacts with Illinois to render it at home in Illinois and plaintiffs' claims do not arise out of or relate to defendant's contacts with Illinois.[1] However, the Court need not dismiss this case on that basis. In the alternative, defendant seeks transfer of this case to the Western District of Wisconsin, and a district court may transfer a case to another proper venue regardless of whether it has personal jurisdiction over the defendant. *See Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). In order to avoid any potential statute of limitations pitfalls, *see id.* at 984-85, and in consideration of the possibility that plaintiffs might, if afforded

---

[1] Given this conclusion, the Court need not consider the Supreme Court's additional factors for assessing whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. *See uBid*, 623 F.3d at 432 (citing *Burger King*, 471 U.S. at 476-77).

the opportunity to amend their complaint, be able to make allegations sufficient to support this Court's exercise of personal jurisdiction over defendant, the Court will consider whether transfer of venue to the Western District of Wisconsin is appropriate.

### III. TRANSFER OF VENUE

#### A. Legal Standards

The federal venue statute provides as follows:

A civil action may be brought in—

**(1)** *a judicial district in which any defendant resides*, if all defendants are residents of the State in which the district is located;
**(2)** *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred,* or a substantial part of property that is the subject of the action is situated; or
**(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391 (emphasis added). When a defendant challenges venue under Rule 12(b)(3), the plaintiff bears the burden of establishing proper venue. *Nat'l Tech., Inc. v. Repcentric Solutions*, No. 13 C 1819, 2013 WL 3755052, at *5 (N.D. Ill. July 16, 2013) (citing *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981)). The court takes the allegations of the complaint as true unless they are contradicted by the defendant's affidavits, and the court may consider materials outside the pleadings. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011). The court resolves any factual conflicts and draws all reasonable inferences in the plaintiff's favor. *See Purdue*, 338 F.3d at 782. The Seventh Circuit has cautioned that "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783; *see also Faulkenberg*, 637 F.3d at 806 (noting that the same standards apply to improper venue as do a Rule 12(b)(2) dismissal). *Id.*

9

Venue can be proper in more than one court. *Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009). Even when venue is proper in the forum of the plaintiff's choice, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). As the Seventh Circuit has explained, "section 1404(a) 'is intended to place discretion in the district court to adjudicate motions for transfer according to [a] . . . case-by-case consideration of convenience and fairness.'" *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-978 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)). In accord with the language of the statute, district courts must "take into account all factors relevant to convenience and/or the interests of justice" in a "'flexible and individualized analysis.'" *Research Automation*, 626 F.3d at 978 (quoting *Stewart*, 487 U.S. at 29).

District courts are to evaluate convenience based on such factors as "the availability of and access to witnesses, . . . each party's access to and distance from resources in each forum[,] . . . the location of material events[,] and the relative ease of access to sources of proof." *Research Automation*, 626 F.3d at 978 (citing cases). The plaintiff's choice of forum is generally entitled to "deference," but the amount of deference depends on the circumstances. *Id.* at 979, 982; *see In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed[, but r]arely . . . is not never.") (internal citations and quotation marks omitted).

District courts assess the "interest of justice" based on factors such as "docket congestion[,] likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each

10

locale, and the relationship of each community to the controversy." *Research Automation*, 626 F.3d at 978 (internal citations omitted). "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.*

### B. Analysis

Although it seems to be implicit in its personal jurisdiction argument, defendant does not specifically argue that venue is improper in the Northern District of Illinois. Rather, defendant argues that, even assuming *arguendo* that venue is proper and the Court has personal jurisdiction, it would still be more convenient to litigate this case in the Western District of Wisconsin, where venue is proper because it is where defendant resides and where the accident that caused Meghan's injuries occurred. Plaintiffs do not dispute that venue would be proper in the Western District of Wisconsin, but they argue that neither the convenience factors nor the interests of justice favor transferring the case there.

#### 1. Convenience Factors

The parties argue chiefly over the convenience of witnesses. Defendant argues that the most relevant witnesses, those present at the resort at the time of the accident, are all located in the Western District of Wisconsin, and therefore are outside of the subpoena power of this Court. Further, defendant states that at least two such witnesses no longer work for defendant and are therefore not under its control, so it will not be able to produce them at trial in Illinois.

Plaintiffs respond that they will have the same problem with their damages witnesses if venue is transferred to Wisconsin. Meghan received most of her medical treatment, including her surgeries, in Illinois, and plaintiffs will not be able to compel her surgeons or other treating physicians and health care providers to appear at trial in Wisconsin.

11

The Court recognizes that "[t]he burden is on the moving party to demonstrate that . . . transfer would not merely shift inconvenience from one party to another." *Gehrett v. Lexus*, No. 11-CV-08587, 2012 WL 3644008, at *1 (N.D. Ill. Aug. 23, 2012) (citing *Fink v. Declassis*, 738 F. Supp. 1195, 1198 (N.D. Ill. 1990)). In this case, as is common, there will be some inconvenience to one side or the other regardless of where this case proceeds, and in such cases, the deference due to plaintiffs' choice of forum may tip the balance against transfer—but not here.

"The force of the plaintiff's choice is . . . diminished 'if the chosen forum has relatively weak connections with the operative facts giving rise to the claim.'" *Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1053 (N.D. Ill. 2012) (quoting *Von Holdt v. Husky Injection Molding Sys., Ltd.,* 887 F. Supp. 185, 188 (N.D. Ill. 1995)). The events giving rise to plaintiffs' claims and on which defendant's liability, if any, will be based all took place in Wisconsin, and even if plaintiffs suffered damages in Illinois, evidence of damages is not of primary importance because the issue of damages is "dependent upon a finding of liability.'" *Abbott v. Schneider Nat'l Carriers, Inc.*, No. 08 CV 4300, 2008 WL 4279590, at *4 (E.D. Mo. Sept. 12, 2008) (granting transfer to district in which accident took place, despite damages witness in forum) (quoting *Wallace v. Ormsby Trucking, Inc.*, No. 4:04CV1652, 2005 WL 1021550, at *3 (E.D. Mo. May 2, 2005)) (same). "Witnesses carry more significance relevant to transfer . . . if they are 'substantially part of the case itself, as they relate to the occurrence of an accident.'" *Abbot*, 2008 WL 4279590, at *4 (quoting *Garr v. BNSF Ry. Co.,* No. 4:06CV0264, 2006 WL 1134535, at *2 (E.D. Mo. Apr.26, 2006)); *see Sentry Select Ins. Co. v. McCoy Corp.*, 980 F. Supp. 2d 1072, 1078 (W.D. Wis. 2013) ("As to convenience of witnesses, plaintiff maintains that the only eye witnesses to the accident . . . reside in Wisconsin . . . and all of the pertinent documents and personnel concerning the trailer at issue are in Wisconsin. Defendants . . . point out that certain . . . others who witnessed the

aftermath of the accident reside in Texas. Defendants fail, however, to describe why these individuals are *more* important than the witnesses who actually saw the accident occur."); *Lyngholm v. FedEx Ground Package Sys., Inc*., 827 F. Supp. 2d 912, 921–22 (S.D. Iowa 2011) (finding defendants' liability witnesses to be "'more critical to the resolution of this litigation than" plaintiffs' damages witnesses) (quoting *Sissel v. Klimley*, No. 3:08-cv-00062, 2009 WL 700186, at *4 (S.D. Iowa Mar. 16, 2009)); *Jarratt v. Amazon.com, Inc.*, No. 5:16-CV-05302, 2017 WL 3437782, at *2 (W.D. Ark. Aug. 10, 2017) ("In this case, testimony of liability witnesses is likely to be more substantial than testimony of damages witnesses.").

Thus, the availability of and access to witnesses and the location of material events favor transfer. Neither party argues for placing much significance on the ease of access to other sources of proof or other resources, and the Court agrees that these factors are entitled to little weight, or considering them would only duplicate the above analysis, to the extent that these factors depend on the location of material events. The events most critical to liability occurred in Wisconsin, and as a result, the most important witnesses (not to mention other sources of proof) are located there, so the convenience factors favor transfer.

### 2. Interest of Justice Factors

Citing federal court management statistics, defendant argues that, in the Western District of Wisconsin, the median time from filing to trial is 22.6 months, 7.4 months less than in the Northern District of Illinois. The speed-to-trial factor favors transfer.

Defendant anticipates that plaintiffs will argue that Wisconsin law applies to this dispute (particularly considering that, under Illinois law, plaintiffs' claim would be barred by the two-year statute of limitations for personal injury claims, 735 ILCS 5/13-202), and defendant argues that the judges of the Western District of Wisconsin are likely to be more familiar with Wisconsin law

than this Court. There is no doubt that defendant is correct, but nevertheless this Court, like most federal district courts, routinely applies the law of other states. This factor favors plaintiff slightly, but the Court places little weight on it.

As for the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy, this case arises out of an accident that occurred at a Wisconsin Dells resort, in a town where tourism of the sort that brought plaintiffs there is a major industry. The interest in having the accusations of wrongdoing by defendant's employees adjudicated locally by their peers is strong. *See Advanced Turf Sols., Inc. v. Johns*, 223 F. Supp. 3d 786, 792 (S.D. Ind. 2016) ("Plaintiff certainly has strong connections to Indiana as an Indiana corporation, but those connections do not extend to the material issues of the dispute underlying this lawsuit. Defendants were employed in Tennessee. They allegedly harmed Plaintiff by taking trade secrets to another Tennessee employer. The dispute solely arises out of conduct that occurred in Tennessee. It is Tennessee—not Indiana—that has the greatest interest in deciding whether Defendants' alleged actions constitute compensable torts. This factor weighs strongly in favor of transfer."); *Rugamboa v. Rungenga*, No. 06 C 1142, 2007 WL 317035, at *3 (N.D. Ill. Jan. 30, 2007) ("Because the accident occurred on a Michigan road, was investigated by Michigan law enforcement and involved Michigan emergency medical personnel, that State has a substantial interest in the resolution of this case. Further, it is in the public interest to have this dispute decided where it arose and to have the local residents act as jurors for this case. Consequently, these factors weigh heavily in favor of a transfer."); *see also Coleman v. Buchheit, Inc.*, No. 03 C 7495, 2004 WL 609369, at *4 (N.D. Ill. Mar. 22, 2004) ("It is a goal of the federal court system to allow members of the community from which the controversy arose to sit on the jury panel and decide the community-related case. This case revolves involves alleged incidents committed by an

employer located in the Central District against former employees who also reside in the Central District. Clearly, the members of the Central District community are entitled to decide this dispute between fellow members of the community.") (internal quotation marks and citation omitted).  The factors of the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy weigh in favor of transfer to the Western District of Wisconsin.

### 3. Conclusion

In assessing whether the various factors, on balance, weigh in favor of transfer, the critical fact is that the events on which the defendant's liability turns took place in the Western District of Wisconsin.

Based on this central fact and on other facts flowing from it, as the Court has explained above, two convenience factors (the location of material events, and the availability of and access to witnesses) and two interest of justice factors (the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy) weigh in favor of transfer.  A third interest of justice factor, speed to trial, also weighs in favor of transfer.  The other factors are neutral or of negligible significance, and the Court places little or no weight on them.  No factors weigh significantly against transfer.

As the Seventh Circuit has explained, the "statutory language provides the ultimate touchstone," *Research Automation*, 626 F.3d at 982, and the statutory language explicitly requires courts to consider "the convenience of parties and witnesses" and "the interest of justice."  28 U.S.C. § 1404(a).  Despite some inconvenience to plaintiffs, particularly in proving their damages, it will be more convenient, on balance, for the parties and witnesses to litigate this case in the district in which the underlying accident occurred and where key liability witnesses reside.

Further, on balance, the interest of justice factors favor the same venue because the case will reach trial faster and the people in the community where the accident occurred will be able to participate in identifying and remedying any wrongdoing committed by fellow members of their community. In the final analysis, the relevant convenience and interest of justice factors weigh in favor of transfer.

## CONCLUSION

Defendant's motion to dismiss or transfer [8] is granted. The Court transfers this case to the Western District of Wisconsin.

**SO ORDERED.**  **ENTERED: December 2, 2019**

_____
**HON. JORGE ALONSO**
**United States District Judge**