IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MEGHAN FAXEL and MIKE FAXEL,

        Plaintiffs,

v.

WILDERNESS HOTEL & RESORT, INC.,

        Defendant/Third-Party Plaintiff,

v.

PROSLIDE TECHNOLOGY, INC.,

        Third-Party Defendant.

OPINION AND ORDER

19-cv-1026-slc

---

Plaintiff Meghan Faxel and her husband Mike Faxel have brought this civil lawsuit to recover damages arising from an injury sustained by Meghan Faxel on the Black Hole water ride at the Wilderness Hotel & Resort in Wisconsin Dells (Wilderness). The Faxels assert claims against Wilderness for premises liability, negligence, and loss of consortium. Dkt. 30. Wilderness has denied liability and has filed a cross-claim against ProSlide Technology, Inc., the company that designed and performed maintenance on the ride.[1] Under the scheduling order for this case, plaintiffs had the opportunity to disclose liability experts, but they missed their deadline and this court found no good cause to extend it. *See* Order, Dec. 10, 2020, dkt. 59. Wilderness now moves for summary judgment, arguing that without a liability expert, plaintiffs cannot meet their burden of proof because the issues the jury would have to consider are beyond the common knowledge of a layperson. Dkt. 69. As explained below, I agree.

The following facts are undisputed unless otherwise noted:

---

[1] On April 30, 2020, the Faxels filed an amended complaint asserting negligence against ProSlide, but this court dismissed those claims as untimely. *See* Aug. 10, 2020 Order, dkt. 49.

FACTS

**I. The Black Hole waterslide at the Wilderness**

The Wilderness's Black Hole waterslide was built and installed in 2005 by ProSlide Technology, Inc., which markets the slide under the generic name "CannonBOWL 40." The slide is located within the "Wild West," one of several indoor water parks at the Wilderness complex. After installation, Wilderness occasionally would contact ProSlide to perform maintenance and repairs.

The Black Hole is a tube ride: the rider uses a single-person inflatable tube supplied by the Wilderness. Signs posted near the entry and on the stairs of the Black Hole ride warn the rider of risks associated with the ride, including acceleration and deceleration from the front, rear, and all sides during the ride. On the date of Faxel's accident, these signs did not warn riders about the potential for dry spots occurring on the ride or what a rider should do if she became stuck or her tube stopped during the ride.[2]

Attendants are stationed at the top and bottom of the ride to assist riders and to keep an eye out for performance and safety issues. After receiving the go-ahead from an attendant at the top, the rider places her tube in the water of the start tub and sits in it, then another attendant gives the tube a shove to get it going. The tube-ensconced rider then descends on a stream of water into a tunnel, which in turn descends to a large, strobe-illuminated, bowl-shaped

---

[2] Plaintiffs have proffered evidence that Wilderness added such a warning after Faxel's injury, but this evidence is barred by Fed. R. Ev. 407, which forbids admission of evidence of "measures [ ] taken that would have made an earlier injury or harm less likely to occur" to prove negligence or culpable conduct. "The major purpose [of the rule] is to avoid discouraging injurers from taking such remedial measures as the accident may suggest would be appropriate to reduce the likelihood of future accidents—and discouraged they would be if they were penalized in court by having the measures treated as a confession of fault in not having been taken earlier." *Kaczmarek v. Allied Chem. Corp.*, 836 F.2d 1055, 1060 (7th Cir. 1987) (citation omitted). Accordingly, I have not considered this evidence in deciding the instant motion.

section.  Once in the bowl, the rider and her tube circle around it on streaming water before descending into another tunnel at the bottom of the bowl area that leads to a pool at the end of the ride, where an attendant is on duty.

## II.  The March 26, 2016 Incident

On March 26, 2016, a Black Hole rider got stuck in the bowl portion in the area between the reverse injector and the first forward injector.[3]  (Although the parties dispute whether this is precisely where Faxel got stuck later, it is in the same general area of the bowl.)  Wilderness's Aquatics Director, Brandon Schindler[4], emailed a video capturing this incident to ProSlide and asked whether there were "any adjustments we should make in light of this."  Mike Rayson, an employee of ProSlide, responded that there was "no cause for immediate concern."  Rayson advised that ProSlide had "seen this issue in the past."  He told Wilderness to keep monitoring the ride for performance issues and to let ProSlide know if any more similar incidents occurred.

Thereafter, Wilderness continued to monitor the Black Hole by conducting safety inspections and test rides.  Schindler has located most of the Daily Safety Checklists and Daily Supervisor logs from the time period between March 26 and August 18, 2016, which confirm that these inspections occurred, and which do not note any problems with water flow or "dry spots" on the ride.[5]  Tens of thousands of guests rode the Black Hole between March 26 and

---

[3] The video of the incident shows that the rider got "unstuck" after another tube crashed into hers and dislodged it.  The record does not indicate whether this rider was injured during the ride.

[4] Schindler is now an Assistant General Manager at Wilderness and testified as its Rule 30(b)(6) representative.

[5] Schindler was not able to locate the Daily Supervisor Logs from July 25 to August 3, 2016 or the Daily Safety Checklists from July 11 to July 25, 2016.

August 18, 2016; during this time, there are no references in Wilderness's incident reports or other records to any riders getting stuck in the bowl or to water flow problems on the ride.[6] However, incident reports only are generated if a guest is injured on a ride.

### III. Meghan Faxel's August 18, 2016 Accident

The Faxel family visited Wilderness's Wild West waterpark on August 18, 2016, and Meghan Faxel chose to ride the Black Hole. Faxel did not notice anything wrong with her tube and it appeared to be properly inflated. As her tube coursed into the bowl area, Faxel spun quickly clockwise, and the water pushed her tube onto a ridge (a.k.a. the "weir") on the left side of the bowl area, past the opening to the lower exit tunnel. Faxel believes she was going too fast when she entered the bowl area, which caused her to overshoot the lower tunnel opening, and that she would have made another pass around the bowl had she not gotten stuck on the ridge. Faxel asserts that there was initially a big surge of water as she entered the bowl, but there was no water flow up on the ridge area. Her tube was "stuck" there for about five seconds before it tipped over, dumping Faxel and causing injury to her shoulder. Faxel was separated from her tube and finished the ride without it.

At the bottom, Faxel immediately notified an attendant that she was injured, and the attendant provided first aid. Wilderness staff closed the Black Hole temporarily to the public while staff members test-rode it. After a staff member rolled over during a test ride, Wilderness

---

[6] One incident report from May 28, 2016, noted that a guest had slid off her tube and hit her head on the Black Hole, but the report is irrelevant because it does not indicate *how* the guest slid off her tube. Although plaintiffs note that Schindler acknowledged that a so-called "dry spot" *could* cause a guest to slide off the tube, this hypothetical possibility does not support an inference that the May 28, 2016 incident was caused by a dry spot or was in any way similar to Faxel's.

4

took the ride out of service for the rest of the day. An aquatics maintenance technician, Jonathan Combs, inspected the slide and thought there was something wrong with it, likely with the water pressure, so he dropped one notch on the reverse injector.

Both at and around the time of Faxel's accident, Aquatics Supervisors employed by Wilderness performed daily safety inspections of the water rides in the Wild West waterpark. This involved, among other things, checking the rides' water flow. The Daily Safety Checklist for the Black Hole on August 18, 2016 did not note any issues with water flow, nor were any such problems noted on any Daily Safety Checklist completed for the Black Hole in the previous 6-week period. In addition to completing these Daily Safety Checklists, each morning before the waterpark opened to the public the Aquatics Supervisors had an Aquatics staff member test-ride the water rides, including the Black Hole. The purpose of the test rides was to discover any maintenance issues or problems with the ride, including "dry spots" and water flow.[7] Aquatics Supervisors completed a Daily Supervisor Log confirming that all water slides had been test ridden each morning. If any maintenance issues were observed, the supervisor noted them at the bottom of the report. The Daily Supervisor log from August 18, 2016, the date of Faxel's accident, shows that a test ride was performed on the Black Hole that morning: the tester encountered no problems with water flow or with any other safety issue.

Schindler testified that getting stuck on the Black Hole as Faxel did was an unexpected outcome of the ride and could present a safety issue. ProSlide's business development manager, Steve Avery, testified that if the Black Hole was operating as intended, an individual would not

---

[7] ProSlide's representative, Steve Avery, testified that the terms "dry spot" or "dry zone" are misnomers because they do not mean that the ride actually is dry to the touch in that area. Rather, these terms refer to an area of the ride where a tube could get stopped because of a lack of sufficient thrust to move the tube. Plaintiffs do not take issue with this definition and they have not attempted to show that the ride actually was dry to the touch in the area where Faxel's tube become stuck.

5

get stuck in the area between the first injector and the reverse injector, nor would her tube travel up the weir.

In December 2016, ProSlide representatives visited the Wilderness to address Wilderness's request that it alleviate a dry zone in the Black Hole between the reverse injector and the first forward injector. ProSlide was aware that a similar issue had occurred on one of its CanonBOWL 40 rides in use at another resort. ProSlide returned in February and March 2017, at which time it relocated an injector and installed another injector.[8]

OPINION

Wilderness moves for summary judgment on the ground that the Faxels cannot prove the elements of their claims without expert testimony. Unlike the question of the admissibility of expert testimony under the Federal Rules of Evidence, federal courts look to applicable state law to determine whether expert testimony is necessary. *See, e.g., Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1345-46 (7th Cir. 1983) (interpreting Illinois' general rule requiring expert testimony as to a physicians standard of care to a negligence claim against an architect). "Whether expert testimony is necessary to support a given claim is a question of law." *Trinity Lutheran Church v. Dorschner Excavating, Inc.*, 2006 WI App 22, ¶ 26, 289 Wis. 2d 252, 710 N.W.2d 680.

The general rule in Wisconsin is that expert testimony is necessary for "matters involving special knowledge or skill or experience on subjects which are not within the realm of ordinary

---

[8] Plaintiffs note that in its report concerning its repairs, ProSlide wrote that Wilderness had reported that "riders" were becoming stuck in a dry spot between the reverse injector and the first forward injector. However, there is no evidence of any riders getting stuck in that spot other than Faxel and the rider on March 26, 2016.

experience of mankind, and which require special learning, study or experience." *Payne v. Milwaukee Sanitarium Found.*, 81 Wis. 2d 264, 276, 260 N.W.2d 386 (1977). Determinations whether expert testimony is necessary are to be made on a case-by-case basis, focusing on the specific theories of liability that plaintiff is pursuing. *Macias v. Mt. Olympus Resorts, LLC*, No. 18-CV-358-WMC, 2019 WL 3007094, at *6 (W.D. Wis. July 10, 2019)("The court must assess the requirement for expert testimony with respect to [plaintiffs'] theories specifically, rather than some requirement more generally of expert testimony for negligence claims concerning bed bugs."); *Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 153–54, 172 N.W.2d 427, 430 (1969) (plaintiff's allegations that went to "hospital treatment in a professional sense" required expert testimony, but allegations about leaving patient unattended and under inadequate restraint were "matters of routine care" that did not).

The Faxels assert claims for premises liability and negligence. To prevail on these claims under Wisconsin common law, the Faxels must prove that: (1) Wilderness breached a duty of care that it had to Meghan Faxel; and (2) Wilderness's breach was a substantial factor in causing Faxel's injury. *Nieuwendorp v. American Family Ins. Co.*, 191 Wis. 2d 462, 475, 529 N.W. 2d 594, 599 (1995).[9] In their complaint, the Faxels assert numerous potential theories of negligence: (1) Wilderness failed to maintain and inspect the Black Hole to make sure it was working

---

[9] Although the parties have not addressed the elements of a claim for "premises liability," neither side suggests that they differ materially from the elements of negligence. *See Eide v. Skerbeck*, 242 Wis. 474, 481, 8 N.W.2d 282, 285 (1943) ("The defendants' duty was to use ordinary care to keep the grounds to which they invited the public safe for the attending public[.]"); Wis. Civil JI 8040 ("Persons conducting places of amusement . . . owe [patrons] only what under the particular circumstances is ordinary or reasonable care."). The Faxels have expressly denied that they are asserting a claim under the heightened duty of care imposed by Wisconsin's safe-place statute, Wis. Stat. § 101.11(1), which requires a business owner "to make the place as safe as the nature of the premises reasonably permits" and which focuses on conditions as opposed to negligent acts. *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶¶ 22-23, 274 Wis. 2d 162, 178–79, 180, 682 N.W.2d 857, 864–66. I have followed the parties' lead and treating both claims as ordinary negligence claims for purposes of deciding the instant motion.

properly and that there was adequate water flow to support the safe movement and progression of riders; (2) Wilderness designed and constructed a ride that allowed riders to become stuck in an unsafe position; (3) Wilderness operated the ride when it was unsafe to do so; (4) Wilderness failed to warn riders that they could get stuck on the ride; and (5) Wilderness failed to instruct riders what actions to take in the event they became stuck on the ride.

Wilderness responds by contending that the Faxels cannot prevail under any of these theories without expert testimony that establishes: (1) the standard of care for waterslide operators like the Wilderness; and (2) what caused Faxel's injury. Wilderness argues that maintaining, inspecting, and operating water rides requires specialized knowledge beyond that of a layperson, as does the question of how Faxel's tube got stuck on the weir and whether it was the result of any negligent act on Wilderness's part. (Wilderness does not dispute that Faxel was injured as a direct result of her tube tipping over after it stuck on the weir, but contends that she can't prove that anything Wilderness did or didn't do caused her to get stuck in the first place.)

In support, Wilderness draws the court's attention to a handful of water ride injury cases from other jurisdictions in which the courts have determined that the plaintiffs could not establish negligence without expert testimony. *See, e.g., Rabadi v. Great Wolf Lodge of the Poconos LLC,* No. 3:15-CV-00101, 2016 WL 4238638, at *9 (M.D. Pa. Aug. 9, 2016) (correlation between alleged increased water pressure on water ride and plaintiff's asserted injury was "not so simple and obvious to obviate the need for expert testimony"); *Deciutiis v. Six Flags Am., LP*, No. 305, SEPT.TERM,2016, 2017 WL 1376671, at *5 (Md. Ct. Spec. App. Apr. 17, 2017) (plaintiff could not rely on *res ipsa loquitur* but needed expert testimony to prove her negligence claim for injuries sustained when her inner tube crashed into another tube that was stuck on

water ride; ride was a complex mechanical device whose design and successful operation was beyond the knowledge of laypersons); *Richmond v. Wild River Waterpark, Inc.*, No. 1972 MDA 2013, 2014 WL 10789957, at *4 (Pa. Super. Oct. 6, 2014) ("[N]owhere does the record show a causal connection (through expert testimony or otherwise) to establish that the type of inner tube supplied caused [plaintiffs] injury."); *Ortiz v. Splish Splash at Adventureland*, 851 N.Y.S.2d 59, 2007 N.Y. Slip. Op. 51825(u), at *4 (Sup. Ct. Nassau Cnty. 2007) (granting summary judgment in favor of the defendant waterpark where plaintiff alleged that the water pressure caused his injuries where there was "no expert affidavit . . . with respect to the water jets at the 'Shotgun Falls' slide").

In response, the Faxels don't necessarily disagree that issues concerning water flow, water pressure and the proper operation and maintenance of water rides would be beyond the ken of the ordinary juror. Rather, they posit that expert testimony is not needed in this case because their theory of liability does not depend on any specialized knowledge of the safety precautions typically taken by water ride operators. Specifically, the Faxels argue that a lay jury can infer that Wilderness was negligent and that its acts or omissions were a cause of Faxel's injuries because one other rider got stuck on the Black Hole not quite five months earlier. In the Faxels' view, their theory of the case is simple: (1) by Wilderness's admission, dry spots can be dangerous; (2) Wilderness had notice of the dry spot on the Black Hole; (3) Wilderness made no effort to repair the dry spot or warn guests about it before Faxel's injury; and (4) Wilderness confirmed that this defect caused Faxel's injury when its employees flipped over when test riding the Black Hole afterward.

For the purposes of this motion, I have given the Faxels the benefit of every factual doubt by accepting their virtually unsupported contention that both the March 26, 2016 incident and Faxel's incident occurred in the same way and were the result of a "dry zone" between the reverse injector and the first forward injector. I also will accept their contention that expert testimony would not be required as a matter of law in a situation where a premises owner knew of an obviously dangerous condition, did nothing about it, and this known dangerous condition then caused injury to someone. But that's not what happened here.

*First*, even assuming the March 26, 2016 incident suggested that the Black Hole was not operating properly, Wilderness *did* do something about it: Wilderness reported the incident to the slide's manufacturer and asked what to do. In response to Wilderness's question whether any adjustments should be made, ProSlide responded in effect, "no, but keep an eye on it."

*Second*, Wilderness *did* keep an eye on the Black Hole, performing daily test rides and safety inspections. It never experienced any ride problems or found any safety problems.

*Third*, literally tens of thousands Wilderness guests rode the Black Hole during this time frame and not one reported becoming stuck or hitting a "dry spot" on the ride.

These facts distinguish this case from *Bruss v. Milwaukee Sporting Goods Co.*, 34 Wis. 2d 688, 150 N.W.2d 337 (1967), a case relied on by the Faxels. In that case, the defendant knew that the bleachers that it had installed at a school had a number of potentially dangerous defects because its own inspector told it so. *Id*. at 695, 150 N.W. 2d at 339. Moreover, the evidence showed that defendant was aware that the defects still existed just four days before the bleachers collapsed and injured the plaintiffs while they were attempting to close them. *Id*. Here, by contrast, Wilderness was not only told by the manufacturer that the single incident of a rider

10

getting stuck was nothing to worry about, but that advice was consistent with Wilderness's own observations and the experience of tens of thousands of guests who rode the Black Hole without incident in the five months up until Faxel got hurt. Under these circumstances, there is no basis upon which a jury could find that Wilderness was aware–or even should have been aware–that the Black Hole actually had a potentially dangerous "dry zone" in the first place, much less that any such dry zone still was present almost five months later when Faxel's tube got stuck. In short, the Faxels' theory fails on its second plank because there is no basis from which a jury could find that Wilderness had notice of a "defect" at all, much less that it was dangerous, much less that it still existed at the time of Faxel's injury.

The Faxels seem to suggest that the jury could infer that Wilderness breached its duty of care by relying on ProSlide's assurances rather than taking the initiative to "fix" the Black Hole itself, or at least to warn guests what to do in the event their tubes got stuck. In this situation, however, a lay jury *would* lack a sufficient basis in common knowledge to infer negligence without speculating. In particular, lay jurors would have no basis to determine whether it is standard in the waterpark industry for ride operators to rely on ride manufacturers' advice in the case of performance issues, and correspondingly, whether such reliance was appropriate in this case. Common sense suggests that it was; after all, ProSlide built and installed the Black Hole and probably had sold and installed other CannonBOWL 40 slides, so it would have the know-how and experience to troubleshoot an issue that Wilderness had never encountered before. If industry practice runs counter to common sense, then an expert would have to say so and explain why.

To the same effect, it would not be within the common experience of lay jurors to assess whether Wilderness breached its standard of care by failing to provide a stuck-tub warning based on one stuck tube out of 10,000+ tubes that traversed the Black Hole *without* getting stuck. If anything, a >99.99% success rate for riders would seem to militate against the need for a warning. Again, if industry practice runs counter to common sense, then an expert would have to say so and explain why. "Where the specifics of a defendant's duty of care involve specialized knowledge, plaintiffs must introduce expert testimony to establish this element of a negligence claim." *Lees v. Carthage Coll.*, 714 F.3d 516, 522 (7th Cir. 2013) (citing *Payne v. Milwaukee Sanitarium Found., Inc.*, 81 Wis.2d 264, 260 N.W.2d 386, 392 (1977) ("Expert testimony should be adduced concerning those matters involving special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study or experience."). Asking the jury to find a waterpark operator negligent for relying on the advice of the ride manufacturer or for not posting a warning after a single incident of a stuck tube falls within the category of negligence claims requiring expert testimony. *See Shadday v. Omni Hotels Mgmt. Corp.*, 477 F.3d 511, 515 (7th Cir. 2007) ("It is one thing for a jury unaided by expert testimony . . . to assess the care with which the defendant in an automobile accident case drove, for that is something with which almost all jurors are familiar; it is another thing for a jury to determine the right standard of care to which to hold a hotel.").

The fact that Wilderness made no "formal effort" to track individuals who may have gotten stuck on the Black Hole in 2016 does not give rise to a genuine dispute. The Faxels have failed to put forth any evidence to suggest what this "effort" should have entailed, much less that

it was negligent for Wilderness not to undertake it.  It is undisputed that Wilderness trains its ride attendants to monitor the rides for performance and safety issues by noting if any riders exit in an awkward manner or fall off their tubes; Wilderness also relies on guests to report if they experienced problems on the ride.  The undisputed record further reflects that Wilderness regularly and routinely monitored the Black Hole for safety and performance.  Once again, absent expert testimony, the jury would have no way to assess whether Wilderness's safety precautions, record-keeping, and monitoring efforts were consistent with those of other waterslide operators such that it could find that Wilderness breached its duty of care.

Finally, the Faxels point to hearsay statements indicating that an aquatics technician opined that Faxel's getting stuck was the result of a water pressure problem.[10]  Even assuming the Faxels could present admissible evidence to this effect at trial, they have not introduced any testimony from that technician or anyone else that would allow a lay jury to infer that the water pressure problem was a result of negligent acts or omissions by Wilderness.

In sum, the Faxels have failed to adduce credible evidence upon which a jury could make a reasoned choice between liability and nonliability.  On the undisputed material facts, of this case, establishing that Wilderness failed to exercise its duty of care vis-à-vis Meghan Faxel requires expert testimony.  Because the Faxels have none, their claims against Wilderness must be dismissed.

---

[10] Hearsay is no more admissible at the summary judgment stage than it is at trial, *see Anderson v. City of Rockford*, 932 F.3d 494, 509 (7th Cir. 2019).

ORDER

It is ORDERED that:

(1) Defendant Wilderness Hotel & Resort, Inc.'s motion for summary judgment, dkt. 69, is GRANTED;

(2) Wilderness's Third-Party Complaint against ProSlide Technology, Inc. is DISMISSED as moot;

(3) The joint motion by Wilderness and ProSlide Technology for a protective order, dkt. 98, is DENIED as moot; and

(4) The clerk of court is directed to enter judgment for defendant Wilderness and close this case.

Entered this 28th day of April, 2021.

                                                  BY THE COURT:

                                                  /s/
                                                  _____
                                                  STEPHEN L. CROCKER
                                                  Magistrate Judge